Arturo Carreras y la Sucesión de Gerónimo Carreras, Compuesta de Dolores, Carolina, Julio, José Emilio, Belén y Francisco de Paula Carreras y Carreras, demandantes y apelantes, v. The American Colonial Bank of Porto Rico, demandado y apelado.

No. 3633.—*Visto:* Junio 26, 1925. *Resuelto:* Febrero 19, 1926.

1. Hipotecas — Requisitos y Validez — Validez — Hipotecas en Garantía de Obligaciones de Otro—Hipotecas en Exceso de la Cantidad a Garantizar.—La mera aceptación de varias hipotecas en exceso de la cantidad que trata de garantizarse no convierte por necesidad a todas y cada una de dichas hipotecas en nulas y sin ningún valor.

2. Principal y Fiador—Exención (*Discharge*) del Fiador—Prórrogas por el Deudor sin Consentimiento del Fiador—Hipoteca en Garantía del Cumplimiento de la Obligación de un Tercero—Ejecución de la Hipoteca.—Cuando una persona se obliga a pagar la deuda de un tercero y en garantía del cumplimiento de la obligación principal constituye hipoteca con el carácter de fiador no solidario, si el acreedor otorga prórrogas al deudor sin el consentimiento del fiador, queda extinguida la fianza y con ella la hipoteca que se constituyera en garantía del cumplimiento de su obligación como tal fiador, no pudiendo dicha hipoteca ser, por tanto, ejecutada.

Sentencia de *Charles E. Foote*, J. (Primer Distrito, San Juan), declarando sin lugar la demanda, con costas. *Revocada y devuelto el caso.*

*Luis Llorens Torres*, abogado de los apelantes; *O. B. Frazer* y *R. Castro Fernández*, abogados del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

La Corte de Distrito de San Juan, Distrito Primero, declaró con lugar una excepción previa por falta de hechos para constituir una causa de acción y desestimó la demanda que en parte es como sigue:

"V. Que por escritura No. 15 otorgada en fecha 20 de junio de 1922 ante el notario de esta ciudad don Jacinto Texidor, y la No. 12 otorgada en 29 de junio de 1922 ante el notario de esta ciudad don Miguel García González, la mercantil 'Zalduondo Mier & Co.' concertó con el American Colonial Bank, aquí demandado, un préstamo por la cantidad de veinte mil dólares ($20,000.00). Dicha deuda se reconoció mediante una obligación redactada en inglés y que se hizo parte de la expresada escritura No. 15 otorgada ante el Notario don Jacinto Texidor en fecha 20 de junio de 1922.

"Y para asegurar el importe del préstamo con sus intereses a razón del 9 por ciento anual se intentó constituir las siguientes garantías:

"(A) La mercantil 'Zalduondo Mier & Co.' garantizó la deuda mediante prenda que en la misma escritura se constituyó sobre todos y cualesquiera bienes, mercancías, derechos, acciones y créditos pertenecientes a dicha mercantil 'Zalduondo Mier & Co.'

"(B) Como garantía colateral (no solidaria por parte de los fiadores aquí demandados), se constituyeron además las siguientes:

"1. La propia mercantil 'Zalduondo Mier & Co.' o sea el deudor principal constituyó a favor del Banco demandado, hipoteca voluntaria por diez mil quinientos ($10,500.00) de capital y sus intereses al 9 por ciento anual sobre las participaciones que dicha deudora, o sea la mercantil 'Zalduondo Mier & Co.' tenía en la casa No. 13 y 15 de la calle de San Justo de esta ciudad. Dicha hipoteca se constituyó con el carácter de segunda.

"2. Por parte del demandante Arturo Carreras y Delgado, en su carácter de fiador no solidario, se constituyó hipoteca sobre la finca descrita en el hecho primero de esta demanda a favor del American Colonial Bank, aquí demandado, para garantizar el pago de ocho mil dólares ($8,000.00), parte del préstamo y sus intereses.

"3. Y por parte de don Gerónimo Carreras, también en su carácter de fiador no solidario se constituyeron dos hipotecas a favor del Banco demandado, a saber:

"(a) Hipoteca a favor de dicho Banco por tres mil quinientos dólares ($3,500.00) de capital más sus intereses al tipo de 9 por ciento anual sobre la finca descrita bajo la letra (A) en el hecho segundo de esta demanda.

"(b) Otra hipoteca a favor del Banco demandado por la suma de seis mil dólares ($6,000.00) de capital más sus intereses al 9 por ciento anual sobre la finca descrita bajo la letra (B) en el expresado hecho segundo de esta demanda.

"VI. Que dicho préstamo de veinte mil dólares ($20,000.00) concertado entre la mercantil 'Zalduondo Mier & Co.' y el Banco demandado, se hizo bajo la expresa condición de que si la sociedad deudora dejaba de pagar dos meses seguidos de los intereses convenidos, se consideraría vencida la deuda en su totalidad, y el banco procedería inmediatamente al cobro de la misma. Y según información y creencia de los demandantes la deudora principal dejó de pagar más de tres mensualidades consecutivas de los intereses y el Banco fué negligente en cobrar la deuda y hacer efectiva la prenda. Además, según información y creencia de los demandantes, el refe-

rido Banco demandado concedió a la deudora principal prórroga de dicha deuda sin el previo consentimiento ni conocimiento de los fiadores demandantes.

"VII. Alegan ahora los demandantes que las expresadas escrituras No. 15 del 20 de junio de 1922 otorgada ante el Notario don Jacinto Texidor y la No. 12 del 29 de junio de 1922 otorgada ante el Notario don Miguel García González, anteriormente reseñadas, son nulas y sin ningún valor ni eficacia legal por las siguientes razones:

"(*a*) Por haberse en ellas consignado con manifiesta falsedad ·la cantidad del contrato subsidiario de hipoteca, elevándose a la suma de veinte y ocho mil dólares ($28,000.00) dicha hipoteca para garantizar solamente veinte mil dólares ($20,000.00) que importaba la obligación principal.

"(*b*) Porque siendo una obligación mancomunada, y no solidaria, la fianza hipotecaria prestada por los fiadores demandantes, éstos no podían obligarse con mayor gravamen que la deudora principal. La deudora principal gravó hipotecariamente sus bienes hasta la suma de diez mil quinientos dólares ($10,500.00), mientras que el gravamen de los fiadores excede de esa cantidad.

"VIII. No obstante los vicios de nulidad de que adolecen las hipotecas anteriormente reseñadas, y no obstante la negligencia del banco demandado en dejar de perseguir los bienes dados en prenda, ni haber hecho excusión de todos los bienes de la sociedad deudora, y no obstante las prórrogas concedidas a dicha deudora principal, por cuyas razones ha quedado extinguida la fianza hipotecaria de los demandantes, el banco demandado ha iniciado ante la Corte ̇de Distrito del Primer Distrito Judicial de San Juan bajo el No. 3055 el procedimiento ejecutivo hipotecario donde reclama de los fiadores demandantes una suma de más de diez y siete mil dólares ($17,000.00), habiéndose expedido por la expresada Corte el correspondiente mandamiento sobre requerimiento de pago; siguiendo el curso ordinario de la ley hipotecaria el expresadó procedimiento ejecutivo.

"IX. Que según información y creencia de los demandantes la mercantil deudora 'Zalduondo Mier & Co.' después de otorgadas las escrituras de préstamo con fianza e hipoteca referidas, a requerimiento de su acreedor The American Colonial Bank, le entregó a éste diferentes valores para su cobro, consistentes ̇en cuentas, vales y pagarés de varios deudores de dicha casa 'Zalduondo Mier & Co.,' los cuales valores cobró e hizo suyos el demandado The American Colonial Bank, aplicándolos a otros negocios y cuentas que tenía pendientes con 'Zalduondo Mier & Co.' con cuyos actos del demandado **The American Colonial Bank se disminuyeron notablemente**

las garantías y valores de la deudora 'Zalduondo Mier & Co.' en perjuicio de estos demandantes como fiadores hipotecarios colaterales; por lo cual alegamos que, por este otro motivo, las fianzas de estos demandantes en las expresadas escrituras hipotecarias, quedaron completamente extinguidas.

"X. Los demandantes alegan también lo siguiente:

"Que aun en el caso de que sus dichas fianzas estuviesen subsistentes y aun cuando fueren válidas las hipotecas referidas que constituyeron como garantía colateral, es lo cierto que la deuda principal sólo ascendía a la suma de veinte mil dólares ($20,000.00), según antes se ha expresado y es también cierto según también se ha alegado, que la mercantil deudora 'Zalduondo Mier & Co.' garantizó con hipoteca parte de dicha deuda principal, o sea hasta la suma de diez mil quinientos dólares ($10,500.00); por lo cual la garantía hipotecaria de estos demandantes nunca podría exceder de la suma restante; o sea la cantidad de nueve mil quinientos dólares ($9,500.00); y en consecuencia, el American Colonial Bank como acreedor hipotecario, quedó incapacitado para ejecutar dichas hipotecas por mayor suma de nueve mil quinientos dólares ($9,500.00), y siendo así los hechos del caso, el banco ejecutante ha procedido con malicia y negligencia al no exponer fielmente los hechos y circunstancias que debía tener en cuenta la expresada corte de distrito para autorizar el procedimiento hipotecario que se está tramitando y cuya nulidad solicitamos.

"SÚPLICA: Por virtud de las precedentes alegaciones, los demandantes suplican a esta Honorable Corte de Distrito que se sirva dictar su sentencia en este pleito a favor de los demandantes mencionados y en contra del demandado The American Colonial Bank; declarando nulas las hipotecas constituídas a favor del demandado en las referidas escrituras No. 15 de 20 de junio de 1922 otorgada ante el Notario don Jacinto Texidor y No. 12 del 29 de junio del mismo año ante el Notario don Miguel García González; decretándose la cancelación de dichas hipotecas en el registro de la propiedad; declarando extinguidas en su totalidad las fianzas de los demandantes por virtud de los actos realizados por el banco demandado; o, en otro caso, decretando la reducción de la fianza hipotecaria a la suma de nueve mil quinientos dólares ($9,500.00); y, en todo caso, declarando la nulidad del referido procedimiento hipotecario que se está tramitando; y condenando al demandado al pago de las costas y honorarios de abogado que se originen en este pleito."

Manresa, al hablar del carácter subsidiario de los contra-

tos de prenda y de hipoteca, en la página 378, tomo 12, de sus Comentarios, dice lo siguiente:

"Se encuentran, pues, tales contratos en el mismo caso que la fianza, con la que tienen este carácter común o análogo, y, como sucede con la fianza, no pueden existir jurídicamente la prenda y la hipoteca sin una obligación válida a la que sirvan de garantía, pues si bien el artículo que comentamos no exige de una manera expresa la condición de validez de la obligación que ha de ser objeto de dichos contratos, como lo hace el Art. 1824 respecto de la fianza, hay que sobreentender impuesta esa condición, porque los actos nulos, entre los cuales habría que contar las obligaciones aseguradas con la prenda o la hipoteca cuando no fueren válidas, no pueden producir efecto jurídico alguno."

El artículo 1752 del Código Civil prescribe lo siguiente:

"La prórroga concedida al deudor por el acreedor sin el consentimiento del fiador extingue la fianza."

Escriche, en la página 822 de su Diccionario Jurídico, dice:

"Como la hipoteca es un derecho real que se constituye sobre las cosas del deudor para seguridad de la deuda u obligación, se sigue de aquí necesariamente, que para que haya hipoteca es indispensable que haya también una obligación o deuda, pues que sin cosa principal no puede haber cosa accesoria: de suerte que si la obligación para cuya seguridad se dió la hipoteca, o no existía o se rescindió o anuló por cualquier causa, no tuvo tampoco lugar la hipoteca o dejó de existir al mismo tiempo; y todas las demás causas que extingan la obligación principal, producirán igualmente la extinción de la hipoteca."

Una contrarreferencia que aparece en dicho alegato es la siguiente:

"Véase fianza No. 1, Nos. V, VI, VII, VIII, IX y X, cuyas doctrinas pueden aplicarse respectivamente a la hipoteca, bien cuando el hipotecante sea el mismo deudor, o bien cuando lo sea un tercero."

De la página 832 de dicho diccionario hacemos la siguiente cita:

"Hipoteca principal es la que se constituye primariamente o en

primer lugar para seguridad de una deuda u obligación; e hipoteca subsidiaria es la que se establece secundariamente o en segundo lugar para el mismo objeto por si no fuese suficiente la principal. Es claro que en semejante caso no puede el acreedor perseguir la hipoteca subsidiaria sin haber hecho antes excusión de la principal; es decir, sin haber visto que la finca obligada primeramente no es bastante para cubrir el importe de la deuda.''

En la página 840 encontramos lo siguiente:

''40. Como la hipoteca es un accesorio, y lo accesorio no puede subsistir sin lo principal, es claro que extinguida de cualquier modo la deuda u obligación para cuya seguridad estaba constituída, debe cesar y extinguirse al mismo tiempo la hipoteca, sin que pueda sobrevivir a la deuda; ley 38 tít. 13 part. 5. Mas como la hipoteca es indivisible en sus efectos, es necesario para que se verifique su extinción, que la deuda u obligación principal se haya extinguido por entero; pues si sólo se pagase, por ejemplo, una parte de la deuda, la hipoteca continuaría sin alteración por el resto sobre toda o todas las fincas que le estaban sujetas; ley 19 tít. 1 lib. 20 del Digesto y ley 43, tít. 43, Part. 5.''

Nos inclinamos a convenir con el abogado del apelado en que la mera aceptación de varias hipotecas montantes a $28,000 en garantía de una obligación de $20,000 no convierte por necesidad a todas y cada una de dichas hipotecas en nulas y sin ningún valor. No vemos razón alguna por la cual si acaso la nulidad, de existir alguna, no debe limitarse al exceso de la cantidad que trata de garantizarse. De ser así, entonces la cuestión resulta en gran parte académica en el presente caso, toda vez que las ejecuciones en cuestión son por un saldo de $17,000 solamente, mientras que la obligación original ascendía aproximadamente a $2,500 en exceso a esa suma. Véase en relación con esto el artículo 1727 del Código Civil que ha sido citado y en el cual se fundan ambas partes.

Que la doctrina en cuanto a la aplicación de pagos entre el acreedor y el deudor debe permitirse en perjuicio de los fiadores que han otorgado fianzas en garantía de sus respectivas obligaciones, cuando los pagos se han hecho con el pro-

ducto de las garantías colaterales dadas en prenda por el deudor principal, no es en manera alguna tan clara.

La regla ·general, según hemos indicado, parece ser la de que la hipoteca no puede subsistir a la obligación principal que ha sido extinguida, y para cuya garantía fué constituída la hipoteca. Pero el apelado dice:

"La dificultad con este argumento es que aquí no se trata de fianzas ni de fiadores, sino de hipotecas, y el Artículo 1752 no tiene nada que ver con hipotecas pero cubre exclusivamente fianzas personales. Este artículo 1752 forma parte del Título XIV del Cuarto Libro del Código, mientras es el Título XV que trata de 'Contratos de Prenda, Hipoteca y Anticresis' y en el Título XV no hay disposición semejante, ni en cuanto a prendas ni a hipotecas. El artículo 1781 del mismo Código Civil demuestra claramente que el Art. 1752 (en el Título XIV sobre Fianzas) no es aplicable a hipotecas o garantías hipotecarias, porque dice así:

"Art. 1781.—La forma, extensión y efectos de la hipoteca, así como lo· relativo a su constitución, modificación y extinción y a lo demás que no haya sido comprendido en este Capítulo (Capítulo III del Título XV) queda sometido a las prescripciones de la Ley Hipotecaria, que continúa vigente.

"Así es que no es el Título XIV del Código Civil sobre Fianzas sino la Ley Hipotecaria, que rige en esta materia y si hay algún precepto que se extingue una hipoteca cuando se concede una prórroga al deudor, hay que buscarlo en la Ley Hipotecaria, y claro· está que no hay tal disposición. Por el contrario, la Ley Hipotecaria en su artículo 105, igual al artículo 1777 del Código Civil, dice:

" 'Art. 105.—La hipoteca sujeta directa e inmediatamente los bienes sobre que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación para cuya seguridad fué constituída.'

"Y el artículo 122 dice:

" 'Art. 122.—La hipoteca subsistirá íntegra mientras no se cancele, sobre la totalidad de los bienes hipotecados, etc.'

"En este caso las tres hipotecas fueron constituídas para cumplir· la obligación de pagar $8,000, $3,500 y $6,000 respectivamente al Banco Colonial y es admitido que esta obligación no se ha cumplido.

"Si fuere necesario más jurisprudencia para probar que el artículo 1752 no es aplicable a hipotecas, véase lo que dice Manresa en sus Comentarios en cuanto al alcance del Título XIV del Código Civil:' (Manresa, Comentarios, tomo 12, folio 147):

" 'Título XIV.—*De la fianza.*—Dos son las acepciones que en·el tecnicismo jurídico tiene la palabra fianza; uno lato, amplio y extenso, que comprende, dentro de sus términos, todos los contratos de garantía; y otro, restringido y estricto, que es lo que constituye la fianza propiamente dicha.    *    *    *

" 'En la primera de dichas acepciones comprende también la prenda y la hipoteca,    *    *    *    La fianza puede ser, por lo tanto, personal, pignoraticia e hipotecaria, y ésta es su clasificación generalmente admitida por las leyes; pero al presente sólo hemos de examinar esta institución en su sentido estricto, o ''sea como garantía puramente personal de la obligación asegurada por ella.'' '

" '¿Por qué esa diferencia entre la fianza y la hipoteca? ¿Por qué el hecho de conceder una prórroga extingue la fianza pero no la hipoteca? Simplemente por la diferencia entre las dos clases de obligaciones. La fianza es una obligación puramente personal, sin escritura pública, sin inscripción obligatoria u otras formalidades y, aún más importante, sin efecto sobre propiedad inmueble, mientras que la hipoteca es un documento solemne y formal, inscrito en un Registro Público, de un grado de dignidad mucho más alto, y porque en fin afecta el título de propiedades inmuebles, la cosa quizás de más importancia en las mentes de los jurisconsultos que establecieron nuestro sistema de leyes. Por eso es que establecieron el precepto que una hipoteca no se extingue excepto por medio de su pago.

" 'III. *El hecho de que el banco no ha ejecutado la prenda no afecta las hipotecas.*—Los apelantes en su alegato alegan que el banco tenía que proceder en contra de la prenda antes de ejecutar las hipotecas pero no citan jurisprudencia sobre este punto y sometemos que no tiene fundamento. Si el acreedor tiene dos garantías por una deuda tiene el derecho de proceder en contra de cualquiera de las dos a su gusto.

" 'IV. *No hay derecho de excusión en este caso.*—El derecho de excusión es un derecho de un fiador y no de un deudor hipotecario. Sobre este punto repetimos lo que hemos dicho más arriba discutiendo el supuesto error número 2.

" 'V. *La aplicación por el banco de sumas cobradas·de otros valores a otras deudas de Zalduondo Mier & Co. no afecta las hipotecas de los demandantes.*—Se alega en la demanda que después de otorgadas las hipotecas, Zalduondo Mier & Co. entregó al banco para su cobro, otras cuentas, vales y pagarés, y que el banco cobró dichos valores y aplicó la cantidad a otras deudas de Zalduondo Mier & Co. para con el banco. Según los artículos 1140, 1141 y 1142 del Código Civil estos demandantes no pueden quejarse de la aplicación

hecha de estos pagos a menos que tal aplicación fué contraria a las instrucciones de Zalduondo Mier & Co. (que no es parte de este pleito) y no se alega nada en cuanto a eso. Para quejarse de la aplicación hecha por el banco de dichos pagos, los demandantes tienen que alegar hechos demostrando que tal aplicación era ilegal. Pero no alegan razón alguna ni hechos demostrando que tal aplicación era ilegal. Por tanto, esta alegación no justifica una causa de acción.

" 'Conclusión.—Los demandantes insisten en tratar este caso como si fuera un caso de una fianza personal y toda la jurisprudencia que citan es aplicable únicamente a fianzas personales. Pero este caso es el caso de la ejecución de una hipoteca sobre bienes raíces, un derecho real, y los demandantes no pueden encontrar sentencia alguna aplicando tales preceptos a hipotecas sobre bienes inmuebles. La demanda no aduce hechos suficientes para demostrar una causa de acción y la Corte de Distrito no cometió error en declarar con lugar la excepción previa. La sentencia debe confirmarse.' "

Y la dificultad de este razonamiento es que la obligación subsidiaria del contrato de hipoteca no puede separarse de la obligación original que se trata de garantizar con hipoteca. Una sigue a la otra, como la sombra sigue al objeto del cual depende para su existencia. En noventa y nueve casos de cien se constituyen hipotecas en garantía de una obligación personal. De adoptarse la teoría del apelado se restringiría prácticamente la aplicación de la regla general al caso en particular en el cual se constituye una hipoteca en garantía de la suficiencia de otro gravamen preexistente o coexistente. De modo que la excepción se convertiría entonces en la regla.

La cuestión del derecho de los demandantes en este caso a solicitar la excusión del activo y especialmente de la garantía colateral dada por su principal, y el efecto de la alegada omisión por parte del banco en ejecutar primero dicha garantía colateral cuando se alega como fundamento de nulidad de los procedimientos ejecutivos, bien puede quedar abierta a discusión hasta que se suministre alguna luz adicional en relación con ella por el abogado.

Si fuera cierto como se alega en la demanda, y para los

fines de ésta opinión, asumimos que el hecho es que la obligación personal de los deudores como garantía quedó extinguida por razón de la prórroga concedida a su principal sin su conocimiento o consentimiento, entonces el gravamen hipotecario desapareció y por tanto no puede ser ejecutado.

*Debe revocarse la sentencia apelada.*

El Juez Asociado Sr. Wolf firmó: "Conforme con la sentencia.