SIMÓN P. LIECHTY y LEAH J. LIECHTY, demandantes y recurrentes, *v.* JORGE DESCARTES SAURÍ y OTROS, demandados y recurridos.

*Número:* R-79-415     *Resuelto:* 21 de marzo de 1980

*Julio Eduardo Torres*, abogado de los recurrentes; *Rafael Martínez Rivera*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Los esposos Liechty recurren contra sentencia del Tribunal Superior, Sala de Aibonito, de 20 de julio de 1979, que les reconoció un crédito personal de $40,000 contra los recurridos, pero denegó su solicitud de que se anulara y cancelara una hipoteca que grava una finca en la cual podrían ejecutar su crédito. El recurso plantea si, habiéndose constituido la hipoteca en garantía de unos pagarés al portador que no han sido negociados, debe subsistir. Resolvemos que, no habiéndose negociado los pagarés, no existe obligación alguna garantizada por la hipoteca y, dado su carácter accesorio, dicha hipoteca no ha cobrado vida ni tiene eficacia contra el crédito de los recurrentes.

Se plantea, además, el alcance que pueda tener el hecho de que los referidos pagarés al portador, aunque no fueron negociados, estaban en poder de un tercero como su custodio. Consideramos que, no representando dichos pagarés obligación alguna a favor de ese tercero, no advino por ese hecho su tenedor o portador. Los hechos ante nos tampoco justifican concluir que hubiesen sido dados en prenda.

I

En 1962 los esposos Liechty vendieron a los esposos Descartes Saurí, una finca de poco más de veinticinco cuerdas sita en el Barrio Pulguillas, de Aibonito, por precio de $58,000. Los compradores quedaron a deber $46,000, que se obligaron a pagar en cuatro plazos a vencer, respectivamente, el primero de septiembre de los años 1962, 1963, 1964 y 1965. Constituyeron hipoteca sobre la finca comprada en garantía del pago de dichos $46,000. Ésta fue debidamente inscrita. Los compradores efectuaron el pago correspondiente al primer plazo, no así los restantes, iniciándose conversaciones entre ellos y los vendedores que culminaron en la

siguiente transacción: se fijó el balance de la deuda en $40,000, que se pagarían mediante seis pagarés personales suscritos por los esposos Descartes Saurí y Salvador Descartes y Rafael López Vega como codeudores solidarios. El importe de dichos pagarés totalizaba $15,000.00. Éstos vencerían, respectivamente, el primero de enero de los años 1966, 1967, 1968, 1969 y 1970. Los restantes $25,000 se pagarían en efectivo por los esposos Descartes Saurí al obtener ellos un préstamo de la F.H.A. a ser garantizado con hipoteca sobre la finca. Las gestiones con la F.H.A. no tuvieron éxito. En vista de ello, los Liechty demandaron en ejecución de la hipoteca constituida en garantía del precio aplazado de $46,000. El Tribunal Superior, Sala de Ponce, en sentencia de 18 de marzo de 1965, declaró sin lugar la demanda al concluir que hubo una novación de la obligación hipotecariamente garantizada, y al concluir que los seis pagarés personales no estaban vencidos. Los Liechty habían embargado enseres de granja, alimentos y otros aperos relacionados con la crianza de pollos y cerdos a que se dedicaba la finca. Dispuso la sentencia del 1965 un plazo de seis meses a partir de la devolución por los Liechty de lo embargado, para que los Descartes Saurí les pagaran los $25,000. La sentencia advino final y firme. Los Liechty devolvieron lo embargado el 10 de septiembre de 1965, dejando constancia de ello en el tribunal. No obstante, los Descartes Saurí no les pagaron los $25,000, y permanecen también impagados los seis pagarés personales, todos los cuales vencieron.

Mientras tanto, los esposos Descartes Saurí otorgaron cinco pagarés al portador por $10,000 cada uno, para un total de $50,000.00, y constituyeron hipoteca sobre la referida finca de 25 cuerdas para garantizar su pago. Valiéndose de la sentencia del 1965 obtuvieron la cancelación en el Registro de la Propiedad de la hipoteca que había sido constituida a favor de los Liechty en garantía del precio aplazado sobre la venta de la finca. Obran en autos deposiciones tomadas a Rafael López Vega y a Jorge y Salvador Descartes en que éstos

admiten que los cinco pagarés, después de estar por cerca de dos años en poder de sus otorgantes, han pasado a manos de López Vega como "custodio" de los mismos. No han sido negociados ni representan obligación alguna de los otorgantes de dichos pagarés a favor de López Vega ni de ninguna otra persona.

## II

No se plantea en este caso la validez de la inscripción de la hipoteca ni su efecto frente a terceros desde el punto de vista del Derecho registral inmobiliario. Lo que está planteado es la existencia misma de la hipoteca como derecho real accesorio, es decir, en función de la existencia de una obligación principal que garantiza. Como se sabe, es requisito esencial de la hipoteca que ésta se constituya para asegurar el cumplimiento de una obligación principal. Art. 1756, Código Civil, 31 L.P.R.A. sec. 5001, en su primer inciso.

■ Ni el Código Civil ni la Ley Hipotecaria hacen una definición expresa de la hipoteca. Ésta es regulada en ambos cuerpos legales. El Código Civil señala en su Art. 1756, 31 L.P.R.A. sec. 5001, inciso primero, que es requisito esencial "[que] se constituya para asegurar el cumplimiento de una obligación principal". La Ley Hipotecaria dice, en su Art. 105, 30 L.P.R.A. sec. 201:

"La hipoteca sujeta directa e inmediatamente los bienes sobre que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación para cuya seguridad fue constituida." (¹)

Sobre el concepto civil de la hipoteca señalamos en *Gautier* v. *Registrador*, 24 D.P.R. 704, 706 (1917):

(¹) La Ley Hipotecaria y del Registro de la Propiedad aprobada el 8 de agosto de 1979 para regir a partir del 8 de agosto de 1980 (Art. 256), contiene la siguiente disposición, en que recoge lo dispuesto por el citado Art. 105 de la ley aún vigente:

"Art. 155—La hipoteca sujeta directa e inmediatamente los bienes y derechos sobre que se impone, cualquiera que sea su poseedor o titular, al cumplimiento de la obligación para cuya seguridad fue constituida.

"Las hipotecas inscritas serán rigurosamente cargas reales, pudiendo realizarse los créditos hipotecarios, no obstante cualquier derecho posterior adquirido sobre los mismos bienes o derechos hipotecarios."

"... La hipoteca fue en este caso como lo es siempre, un contrato en garantía del cumplimiento de una obligación principal, y sin dicha obligación ningún contrato de hipoteca puede subsistir. ... Como sugiere Manresa, el contrato de hipoteca carecería de objeto sin existir otra obligación principal cuyo cumplimiento asegure y garantice. ..." (Citas omitidas.)

Los tratadistas han elaborado distintas definiciones de la hipoteca, que difieren más bien en el modo de expresión que en la substancia. Véanse: Roca Sastre, *Derecho Hipotecario*, Vol. IV, pág. 7; Sánchez Román, *Estudios de Derecho Civil*, Madrid, (ed. 1900), T. III, pág. 793; Muñoz Morales, *Lecciones de Derecho Hipotecario*, T. II, pág. 12. Consúltese Vázquez Bote, *Derecho Civil de Puerto Rico*, (ed. 1974), Vol. III, T. II, págs. 404 a 416, y Brau, *Apuntes para un Curso de Derecho Inmobiliario-Registral Puertorriqueño*, mimeógrafo U.P.R., (oct. 1978), pág. 295 y ss. Véanse, además, *Nueva Enciclopedia Jurídica*, (ed. 1962), Vol. XI, pág. 57; *Diccionario de Derecho Privado*, (ed. 1954), T. II, pág. 2077 y ss.; Morales Lebrón, *Diccionario Jurídico Según la Jurisprudencia del Tribunal Supremo de Puerto Rico*, (ed. 1977), Vol. II, págs. 489–490. Nos parece más atinada y de más moderno enfoque la definición dada por Puig Peña, *Compendio de Derecho Civil*, (ed. 1972), Vol. II, pág. 623, en que dice que la hipoteca es "un derecho real perteneciente—en razón de la inscripción y desde el momento de ésta—al acreedor, sobre los inmuebles del deudor o de un tercero, en virtud de cuyo derecho, no obstante conservar el deudor o tercero la posesión de la cosa hipotecada y la facultad de disponer de ella, el acreedor adquiere la facultad de perseguirla, cualquiera que sea la mano en que se encuentre, a fin de ser pagado con el precio de la misma, con la preferencia correspondiente al grado de su inscripción".

Como puede colegirse, el contrato de hipoteca supone la existencia de dos figuras jurídicas, a saber, una obligación principal, y la hipoteca en sí, que sirve de garantía al acreedor de la primera. No se concibe una hipoteca sin

obligación garantizada. Véase *Carreras* v. *Am. Colonial Bank*, 35 D.P.R. 90, 94–96 (1926). El profesor Vázquez Bote, *op. cit.*, pág. 143, resume el carácter accesorio de la hipoteca así:

"Este carácter accesorio explica que la hipoteca subsista efectivamente mientras el crédito que asegura tenga vida. Extinguido el crédito, se extingue la hipoteca; transmitido el crédito, se transmite la hipoteca; la nulidad o ineficacia del crédito, provoca la nulidad o ineficacia de la hipoteca."

■ Señalamos en *Morales* v. *Registrador*, 54 D.P.R. 546, 548 (1939) que "la escritura de hipoteca en garantía de un pagaré hipotecario al portador no es un contrato bilateral en el momento de su otorgamiento, ni puede ser considerada como tal hasta que el pagaré haya sido negociado por el deudor mediante su entrega a la persona que a su vez le entrega el importe del préstamo". Y, a renglón seguido, añadimos: 'Pero tan pronto como el deudor recibe el importe del préstamo y el acreedor acepta el pagaré, como evidencia de la deuda, la oferta contenida en la escritura de hipoteca se convierte en un contrato válido y obligatorio para una y otra parte contratante".

■ En el caso ante nos no se materializó préstamo alguno. No existía obligación alguna que garantizar por cuanto los esposos Descartes Saurí no negociaron los pagarés hipotecarios ni dejaron de ser sus dueños. Meramente los dieron a custodiar a Rafael López Vega, quien por ello no advino acreedor de los Descartes Saurí. La hipoteca constituida en garantía de dichos pagarés no llegó a tener vida por cuanto no llegó a garantizar obligación alguna.

## III

Los recurridos sugieren en su escrito de oposición la posibilidad de que los pagarés estén en poder de Rafael López Vega en calidad de prenda. No aparece de los autos ante nos que se hiciera alegación a tal efecto ante el tribunal de instancia. De hecho, ni siquiera se consideró tal posibilidad,

limitándose el tribunal a justificar su rechazo de la contención de los demandantes-recurrentes en la ausencia de prueba de fraude.

█ Hemos examinado las deposiciones de los demandados. El señor López Vega fue impreciso en cuanto a ser acreedor de los libradores de los pagarés, señalando que le adeudan cantidades pequeñas que no recuerda, fluctuantes entre $400.00 y $500.00. Reiteró que no es tenedor de los pagarés, los que mantiene en su poder "como custodio" (pág. 11 de la deposición). Si bien el Sr. López Vega se refirió a unas deudas del señor Jorge Descartes Saurí a favor de unos señores Lagares y Jiménez, no estamos convencidos de que su tenencia de los pagarés fuera por delegación de estos señores Lagares y Jiménez actuando éstos como acreedores pignoraticios de Descartes Saurí. Faltaría en la prueba el "común acuerdo" entre deudor y acreedor que se requiere para que la prenda esté en posesión de un tercero. Dice, al efecto el Art. 1762 del Código Civil, 31 L.P.R.A. sec. 5021:

"[*Sec.*] *5021. Requisitos del contrato de prenda*
Además de los requisitos exigidos en la sec. 5001 de este título, se necesita para constituir el contrato de prenda, que se ponga en posesión de ésta al acreedor, o a un tercero de común acuerdo."

El propio Descartes Saurí dejó establecida la duda sobre que deba algo a los señores Lagares y Jiménez. Declaró, primero, que no tiene deudas que excedan de $1,000, y es cuando el abogado de los recurrentes le mencionó a Lagares y a Jiménez que "se acordó" de deudas por cantidades de $10,000 y $15,000 a dichos señores. No precisó los conceptos de estas supuestas deudas, por las cuales no paga ni le exigen intereses, y cuyas cantidades no ingresó en su cuenta de banco; ni recuerda qué hizo con dichas sumas de dinero. Dio como razón de entregar los pagarés a López Vega, no que los mantuviera en prenda de lo supuestamente adeudado a Lagares y a Jiménez, o al propio López Vega, "sino porque yo creí que teniéndolos López Vega se me hacía más fácil

conseguir préstamos que no teniéndolos yo" (pág. 76 de la deposición).

■ Valga señalar, además, que aunque el contrato de prenda no es de constitución formal, pudiendo constituirse verbalmente, no es oponible a tercero si no consta la certeza de su fecha por documento auténtico. Así lo exige el Art. 1764 del Código Civil, 31 L.P.R.A. sec. 5023. (²) *Ramos Mimoso* v. *Tribunal Superior*, 93 D.P.R. 551, 555 (1966). Dijimos en *Ramos Mimoso:* "La prenda, como se sabe, no es un contrato de constitución formal. Para su existencia basta que se haya concertado de cualquier manera lícita y que cumpla con los requisitos intrínsecos que el Código exige (Art. 1762); puede constituirse hasta verbalmente, y obligará a las partes. Lo que ocurre es que para que pueda oponerse con éxito frente a terceros la certeza de su fecha deberá constar por documento auténtico. Este pequeño requisito de formalidad, para que pueda operar contra terceros, se basa en el propósito de evitar la simulación de créditos pignoraticios por un deudor en perjuicio y fraude de terceros acreedores suyos." (Escolio omitido.) En este caso no se produjo ni hay constancia de documento alguno en que conste un contrato de prenda.

*Por las precedentes consideraciones, procede expedir el auto de revisión solicitado y modificar la sentencia recurrida para decretar la ineficacia de la hipoteca constituida en garantía de los cinco pagarés por la suma total de $50,000.00, y ordenar su cancelación en el Registro de la Propiedad. Así modificada, la sentencia del tribunal de instancia será confirmada.*

El Juez Asociado Señor Díaz Cruz no intervino.

---

(²) Dicho artículo dispone:
"[*Sec.*] *5023. Efecto de la prenda contra tercero*
"No surtirá efecto la prenda contra tercero si no consta la certeza de la fecha por documento auténtico."