# 2006 DTA 1

RECEIVED

FEB 0 3 2006

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE CAGUAS
#### PANEL XI

JOSÉ ALBERTO MATOS MATOS, CARMEN L. BORGES Y LA SOCIEDAD
LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS
Apelado

v.

LUIS RODRÍGUEZ MORALES, LORENZA RODRÍGUEZ RUIZ Y LA SOCIEDAD LEGAL DE
GANANCIALES COMPUESTA ENTRE AMBOS
Apelantes

Núm. KLAN-05-00421

San Juan, Puerto Rico, a 6 de octubre de 2005

Panel integrado por su Presidenta, la Juez Pesante Martínez,
la Juez Feliciano Acevedo y el Juez Salas Soler

Pesante Martínez, Juez Ponente

Harv. Dep.
KGV
.74
.A21995
v. 11
no. 13-24

## TEXTO COMPLETO DE LA SENTENCIA

Comparecen ante nos los apelantes de epígrafe, Luis Rodríguez Morales, Lorenza Rodríguez Ruiz y la sociedad legal de bienes gananciales compuesta por ambos (en adelante, la parte apelante), solicitando la revisión de cierta sentencia dictada el 11 de enero de 2005 por el Hon. Ramón Rojas Peña, Juez Superior del Tribunal de Primera Instancia, Sala de Caguas. La misma fue notificada a las partes el 21 de enero de 2005.

En el referido dictamen se declaró Con Lugar la demanda interpuesta por los demandantes (aquí apelados) José Alberto Matos Matos, Carmen I. Borges y la sociedad legal de bienes gananciales compuesta por ambos en contra de la parte apelante. La causa de acción interpuesta por los apelados respondió a una solicitud de ejecución de cierta hipoteca que gravaba un inmueble de la propiedad de los apelantes, el cual había sido adquirido por estos últimos mediante venta judicial, en fecha posterior a la constitución e inscripción del gravamen en cuestión. El Tribunal de Primera Instancia (en adelante, el TPI) estimó probado el crédito reclamado y condenó a los apelantes al pago de las partidas que le fueron reclamadas, a saber, $55,000 de principal, $86,625 por concepto de intereses y $8,250 para cubrir costas, gastos y honorarios. Para cubrir el pago de dichas partidas, el TPI mandó la venta en pública subasta de la propiedad objeto del crédito hipotecario ejecutado en el litigio.

Luego de examinar la totalidad del expediente, y teniendo el beneficio de examinar la transcripción de la prueba oral sometida por la parte apelante, concluimos que procede la modificación del dictamen apelado sujeto a los siguiente fundamentos.

I

A continuación esbozamos la cronología de hechos materiales y pertinentes que dan base a la controversia de autos.

Mediante escritura número 41 otorgada el día 20 de abril de 1989, ante el Notario Angel F. Vélez Pozo, fue

constituida hipoteca en garantía de un pagaré al portador por la suma principal de $55,000 con intereses pactados al 11 ¼% anual sobre el inmueble que se describe de la siguiente manera:

*"RUSTICA: Predio de terreno radicado en el Barrio Ceiba del término municipal de Cidra, compuesta de DIEZ Y OCHO CUERDAS CON DIEZ (10) CENTIMOS DE OTRA, con una casa de madera techada de zinc, dedicada a vivienda, equivalentes a siete (7) hectáreas, setenta y siete (77) áreas, cuarenta (40) centiáreas y veinticuatro (24) miliáreas, y en lindes: por el Norte, con Liborio Cruz, antes, hoy por su Sucesión, separada por un camino municipal; por el Sur, hoy día con Félix Colón y Felicita Reyes; por el Este, antes Sucesión de Primitivo Quiles, hoy Angel González; y por el Oeste con la parcela segregada y vendida a Flora Mulero.-------*
*--------------------------*

*Consta inscrita al Folio sesenta y cuatro (64) del Tomo ochenta (80) de Cidra, Sección Segunda (2da) de Caguas, Finca número tres mil seiscientos sesenta y cinco (#3665)--."*

En la referida escritura, se estipuló además un interés de 15% para el pago de costas, gastos y honorarios de abogado en caso de reclamación judicial. La deuda objeto del pagaré vencería el 20 de abril de 1990. La hipoteca fue registrada a la octava inscripción de la finca 3,665, Folio 69-V, Tomo 80 del Municipio de Cidra.

El inmueble antes descrito fue objeto de venta judicial. La subasta fue celebrada el 26 de marzo de 1996. La propiedad le fue adjudicada a los aquí apelantes. Los pormenores de dicho acto constan en escritura número 7 sobre Venta Judicial, otorgada el 26 de marzo de 1996, ante la Notario Carmen L. Rivera Mercado.

Posteriormente, el 30 de abril de 1999, los aquí apelados presentaron el escrito de Demanda que originó la controversia de autos. Estos últimos, tenedores del pagaré aludido arriba, entablaron una acción de ejecución de hipoteca por la vía ordinaria en contra de los apelantes. En síntesis, reclamaron el pago del principal, intereses y sumas correspondientes a costas, gastos y honorarios según fuera estipulado y garantizado en la escritura constitutiva de hipoteca descrita antes. Según éstos, la deuda dineraria evidenciada en el pagaré que ostentaban, había vencido en abril de 1989. Respecto a los intereses, se reclamó el pago de los mismos computándolos a partir de mayo de 1989 cuando, alegaron, dejaron de satisfacerse.

Tanto en su contestación a demanda, como en escritos subsiguientes, los apelantes han sostenido en resumen que el contrato de préstamo que dio base para el pagaré, cuyo cumplimiento quedó garantizado por hipoteca, fue uno celebrado en fraude de acreedores. Han aducido que el negocio está viciado de nulidad. En lo que atañe a los intereses, han sostenido su queja de que son excesivos, o como indicaran, *"usurarios"*.

Luego de varios trámites procesales, el 11 de enero de 2005, el TPI dictó la sentencia apelada. Como indicáramos antes, mediante la referida sentencia se declaró con lugar la demanda presentada por los apelados. El TPI estimó evidenciado, tanto por prueba testifical como documental, que la deuda reclamada estaba en efecto vencida, y además, que era líquida y exigible. Por tanto, condenó a los apelantes al pago de $55,000 por el principal de la deuda hipotecaria reclamada; $86,625 por los intereses devengados y no pagados a partir de mayo de 1989 hasta el presente; y además, $8,250 por concepto de costas, gastos y honorarios de abogados. Frente a esta determinación, los apelantes presentaron sin éxito una moción solicitando determinaciones de hechos y conclusiones de derecho adicionales.

Inconformes, los apelantes acudieron ante nos mediante su escrito de apelación señalándole al TPI los siguientes errores: primero, declarar ha lugar la demanda y al ordenar la ejecución de la hipoteca basado en la prueba presentada; segundo, resolver que la hipoteca inscrita no era un subterfugio en fraude de acreedores; tercero, denegar la solicitud de determinaciones de hechos y conclusiones de derecho adicionales; y cuarto, no resolver sobre los intereses impuestos y la aplicabilidad de la prescripción quinquenal respecto a éstos.

Luego de un examen a fondo de la prueba contenida en el expediente de este caso, concluimos que el TPI no incurrió en los errores señalados por la parte apelante. No obstante, tomamos cuenta de que sí incidió el TPI en el cómputo de los intereses vencidos a ser pagados por los apelantes. No siendo ello óbice para la revocación de la sentencia, exponemos los fundamentos que tendrá que tomar en cuenta el TPI para modificar su pronunciamiento.

## III

La hipoteca se ha definido como un derecho real de realización de valor, por lo que su titular tiene la facultad de exigir la enajenación de la cosa para obtener el valor pecuniario, aunque ésta haya pasado a manos de terceras personas. ■ Ese precepto lo recoge el Art. 1757 de nuestro Código Civil, 31 L.P.R.A. §5002, que dispone, en síntesis, que vencida la obligación principal, la cosa hipotecada debe poder ser enajenada para pagar al acreedor. Abonando a lo anterior, el Art. 1775 del Código Civil, 31 L.P.R.A. §5043, establece que *"[l]a hipoteca sujeta directa e inmediatamente los bienes sobre los que se impone, cualquiera que sea su poseedor al cumplimiento de la obligación para cuya seguridad fue constituida"*.

Cabe destacar que una de las características inherentes a la hipoteca es su accesoriedad. Así, conforme a lo dispuesto en el Art. 1756 del Código Civil, 31 L.P.R.A. §5001, ■ se ha interpretado que la hipoteca no es ni puede ser un derecho autónomo, pues por su condición de derecho de garantía es requisito esencial e indispensable que se constituye para asegurar el cumplimiento de una obligación principal. ■ Se le considera un pacto accesorio al principal que no constituye un derecho independiente con existencia propia. Incluso, se sostiene que su dependencia es de tal grado que si la obligación garantizada es nula, la hipoteca también lo será, y si la obligación es inexistente, tampoco existirá la hipoteca. ■

Sobre lo anterior, precisa remitir a los hechos y el derecho discutido en el caso normativo *Liechty v. Descartes Saurí*, 109 D.P.R. 496 (1980), donde se determinó que, dado su accesoriedad, no cobró vida cierta hipoteca constituida en garantía de unos pagarés al portador que no fueron negociados, sino que permanecieron en manos de los deudores después de otorgarlos. El Tribunal sentenció que, dadas esas circunstancias, no se materializó préstamo alguno, y que por tanto, no existía obligación alguna que garantizar. Allí se expuso que *"el contrato de hipoteca supone la existencia de dos figuras jurídicas, a saber, una obligación principal, y la hipoteca en sí, que sirve de garantía al acreedor de la primera"*. ■ Se añadió que no se concibe una hipoteca sin obligación garantizada. ■

Prosiguió el Tribunal, y citando a *Morales v. Registrador*, 54 D.P.R. 546, 548 (1939), indicó que *"la escritura de hipoteca en garantía de un pagaré hipotecario al portador no es un contrato bilateral en el momento de su otorgamiento, ni puede ser considerada como tal hasta que el pagaré haya sido negociado por el deudor mediante su entrega a la persona que a su vez le entrega el importe del préstamo"*. ■ Añadió que *"tan pronto como el deudor recibe el importe del préstamo y el acreedor acepta el pagaré, como evidencia de la deuda, la oferta contenida en la escritura de hipoteca se convierte en un contrato válido y obligatorio para una y otra parte"*. ■

En otros asuntos relevantes, conviene aclarar que la hipoteca se extingue cuando se extingue la obligación que garantiza, pero también con la ejecución hipotecaria y por prescripción. Mediante la ejecución no sólo queda extinguida la hipoteca, sino que también se extinguen todas las hipotecas posteriormente inscritas a la ejecutada. ■ La prescripción, por su parte, cobra efecto por la inacción del titular del crédito hipotecario en el tiempo determinado por la ley para ejercitar la acción hipotecaria. ■ En relación a lo último, existen varios términos prescriptivos que inciden en la interposición de la acción hipotecaria.

En cuanto al término prescriptivo que limita el ejercicio de la acción hipotecaria, el Art. 1864 del Código Civil, 31 L.P.R.A. §5294, establece que *"[l]a acción hipotecaria prescribe a los veinte años [...]"*. Por su parte, el art. 180 de la Ley Hipotecaria, 30 L.P.R.A. §2576, detalla que la acción hipotecaria prescribe a los veinte

(20) años, contados desde que pueda ser ejercitada con arreglo al título inscrito. Se ha explicado que ese día en que puede ejercitarse esta acción es el momento del vencimiento del crédito según se consignó en el título. 

Por otra parte, el inciso (3) del Art. 1866 del Código Civil, 31 L.P.R.A. §5296, establece el término prescriptivo de (5) años para exigir el cumplimiento del pago de pensiones alimentarias, satisfacer el precio de arriendos y de cualquier otro pago que deba hacerse por años o en plazos más breves. Lo anterior refiere al denominado plazo quinquenal o prescripción quinquenal. Este plazo, tiene un efecto directo en lo que respecta al cobro de intereses garantizados por hipoteca en casos de ejecución.

En *Campos Ledesma v. Fomento Industrial,* **2001 J.T.S. 4**, se trajo a colación el texto del Art. 166 de la Ley Hipotecaria, 30 L.P.R.A. §2562. Este artículo dispone que:

*"Salvo pacto en contrario, la hipoteca constituida a favor de un crédito que devengue interés sólo asegurará, con perjuicio a tercero, además del capital, los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente.*

*En ningún caso podrá estipularse que la hipoteca asegure intereses por un plazo superior a cinco años. Cuando se fije en la escritura una cantidad global para responder del pago de intereses no podrá el mismo exceder del importe correspondiente a los intereses de cinco anualidades."*

El Tribunal Supremo señaló en el citado caso que dicho articulado denotaba que el legislador estableció un tratamiento distinto en cuanto al capital y los intereses, rechazando la posibilidad de que las partes estipulen que la hipoteca asegure intereses por más de cinco años. Concluyó el Tribunal que ello significa que el bien hipotecado, en ningún caso, responderá por los intereses que excedan los devengados durante cinco años. Más importante aún, en el referido caso se adoptó la norma de que la prescripción quinquenal aplica al cobro de intereses garantizados por hipoteca.

El referido pronunciamiento incide entonces en el concepto de la extensión de la hipoteca respecto del crédito garantizado. Lo anterior remite a la determinación de cuánto dinero podrá obtener el acreedor si se ve obligado a ejecutar el crédito hipotecario. Para realizar tal determinación, se toma en consideración: si la hipoteca garantiza una obligación que produzca intereses; si la referida hipoteca garantiza no sólo el capital principal, sino también todos lo intereses devengados y otras partidas; si el Registro publica efectivamente la cuantía de la obligación, incluyendo los intereses y costas, para que pueda afectar a terceros en el límite señalado; y además, si la finca hipotecada pasó a un tercer adquirente (o si hay algún tercero que pueda resultar perjudicado, como en el caso de terceros que tengan a su favor gravámenes o derechos posteriores a la hipoteca a ejecutarse). En instancias como las últimas descritas, se ha considerado que sería injusto y contradictorio que la fe pública registral comprendiese los intereses y costas en toda su cuantía. 

Así pues, cuando la finca hipotecada a ejecutarse continúa en poder del deudor y no existen gravámenes posteriores, entra en juego el Art. 190 de la Ley Hipotecaria, 30 L.P.R.A. §2609. Este artículo dispone que *"[s]e considerará asegurado con la hipoteca el interés del préstamo en la forma que prescriben los arts. 166 y 167"* de la Ley Hipotecaria *"únicamente cuando la estipulación y cuantía de dicho interés resulten de la inscripción misma"*. Más importante aún, establece dicho artículo que *"[e]l acreedor hipotecario podrá repetir contra los bienes hipotecados para el pago de los intereses vencidos, cualquiera que sea la época en que deba verificarse el reintegro del capital"*.

Se ha interpretado que en este caso, al ejecutar la hipoteca, el acreedor podrá obtener el principal más todos los intereses vencidos, por grande que sea tal cuantía y por antiguo que sea su vencimiento, y ello, aunque no surjan del Registro. Aplicando el pronunciamiento de *Campos Ledesma, supra,* sobre la prescripción quinquenal, los referidos intereses vencidos, no pagados ni prescritos que podrá cobrar el acreedor hipotecario

ejecutante son aquéllos acumulados durante los cinco (5) años anteriores a la fecha de presentada la acción de ejecución de hipoteca. Los intereses que excedan dicho término se entienden prescritos.

No obstante, distinto es el caso cuando el inmueble hipotecado ha sido adquirido por un tercero, o cuando aún estando en el patrimonio del deudor, un tercero ha adquirido un derecho real, carga o gravamen sobre el mismo. En estos casos, el citado Artículo 190 de la Ley Hipotecaria, *supra*, indica que si hubiere un tercero interesado a quien pueda perjudicar la repetición ejecutada por el acreedor hipotecario, este último "*no podrá extender la cantidad que por ella se reclama de la garantizada con arreglo al Art. 166*" de la Ley Hipotecaria.

Entiéndase, que conforme los citados artículos 166 y 190 de la Ley Hipotecaria, *supra*, junto con el pronunciamiento en *Campos Ledesma*, *supra*, en caso de que el bien hipotecado esté en manos de un tercero adquirente, el acreedor hipotecario ejecutante sólo podrá obtener el principal y los intereses correspondientes a los últimos dos años transcurridos previamente a instada la acción hipotecaria, más la parte vencida de la anualidad corriente, siempre que dichos intereses estén inscritos en el Registro.

En resumen, de todo lo anterior podemos concluir lo siguiente. Primero, todo acreedor hipotecario tendrá un período de veinte (20) años para interponer la acción de ejecución de hipoteca para así recobrar el crédito que fuera asegurado por la hipoteca. La acción la podrá ejercitar el acreedor en el momento del vencimiento del crédito según se consignara en el título. Pasados los veinte años, se tendrá por prescrita la acción. Segundo, está claro además que el acreedor podrá perseguir la cosa hipotecada aunque esté en manos de tercero. No obstante, de ser ese el caso, ello incidirá en las partidas que podrá cobrar cuando ejecute la hipoteca (particularmente en cuanto a los intereses).

Tercero, ejecutada la hipoteca, nunca podrán ser cobradas partidas por concepto de intereses que excedan a aquellos acumulados durante los cinco (5) años anteriores a la fecha de presentada la acción de ejecución de hipoteca (aplicando el denominado plazo quinquenal). Este plazo sólo es de aplicación en el caso de que el bien hipotecado esté aún en manos de deudor obligacional que garantizó su deuda con hipoteca y en el supuesto de que no pesen gravámenes posteriores sobre el inmueble. Pero en el caso de que la finca esté en manos de un tercer adquirente, y los intereses fueran estipulados en la escritura de hipoteca, el acreedor hipotecario ejecutante sólo podrá obtener los intereses acumulados durante los dos años anteriores y lo que hubiere transcurrido del año corriente en que fue instada la acción hipotecaria.

### III

En el caso de autos, el TPI tuvo la oportunidad de examinar y aquilatar la siguiente prueba documental: primero, escritura de constitución de hipoteca número 41 de 20 de abril de 1989, otorgada ante el notario público *Angel F. Vélez Pozo*; segundo, pagaré hipotecario que evidencia la obligación o deuda garantizada mediante la referida hipoteca; y tercero, escritura de venta judicial número 7 de 26 de marzo de 1996.

No fue cuestionado por la parte apelante el que surgiera de la escritura constitutiva de la hipoteca ejecutada por la parte apelada: primero, que fue estipulado el capital principal que quedaría garantizado mediante aquélla; segundo, que se pactó el pago de intereses al 11 ¼%; y tercero, que también se pactó el pago de costas, gastos y honorarios en caso de ejecución. No se puso en duda que las partidas reclamadas por la parte apelada, y los conceptos por los que se reclamaban, tenían base en lo estipulado en aquella escritura.

La parte apelante, aunque cuestionó vehementemente el perfeccionamiento de la obligación principal que era garantizada por la hipoteca ejecutada (un préstamo dinerario), no aportó prueba ni documental ni testifical que demostrara la inexistencia o nulidad del referido negocio jurídico. Lo anterior hubiera tenido el efecto de que procediera declarar nulo el negocio accesorio de hipoteca. Tampoco logró probar la parte apelante que el pagaré hipotecario que presentó el apelado en su acción de ejecución no acreditara la deuda; o que dicho instrumento no hubiera sido negociado tan pronto como el deudor original que constituyó la hipoteca ejecutada

recibió el importe del préstamo.

Valga señalar que del expediente y de la transcripción de la prueba oral sólo surgen conjeturas y especulaciones argumentadas por la representación legal del apelante a los efectos de reputar inexistente o nulo el préstamo hipotecario que garantizó la hipoteca ejecutada. Ello no fue suficiente ni satisfactorio para probar su contención de modo que produjera en el juzgador certeza o convicción moral en una conciencia exenta de preocupación. Por tanto, no hay razón para cuestionar que la oferta contenida en la escritura de hipoteca se haya convertido en un contrato válido y obligatorio para una y otra parte.

Lo que sí quedó probado en la controversia es que existía la hipoteca ejecutada; que la misma era anterior en fecha a la escritura de venta judicial por la cual el apelante obtuvo la titularidad del inmueble hipotecado; que la acción hipotecaria no estaba prescrita, puesto que se presentó dentro del período de (20) años provisto por ley para ese fin (la hipoteca se constituyó en el 1989 y la acción se presentó en el 1999); que la deuda reclamada estaba vencida (conforme los términos pactados en la escritura de hipoteca); y por último, que el portador del pagaré persiguió el inmueble hipotecado, como le permite la ley, aún cuando estuviera en manos de un tercer adquirente, a saber, el apelante.

Por motivo de lo anterior, el TPI procedió a declarar con lugar la acción hipotecaria presentada por la parte apelada concediéndole las partidas reclamadas. En esta ocasión, entendemos que no es preciso intervenir con la apreciación de la prueba que hiciera el TPI. La prueba que obra en el expediente del caso no evidencia que sus determinaciones estén viciadas por pasión, prejuicio, parcialidad o error manifiesto. Valga aclarar que el único error que encontramos, entendemos que no es óbice para revocar su dictamen.

Advertimos que el TPI cometió el error de conceder, por concepto de intereses, una cuantía que excede a la que permitiría nuestro ordenamiento. El tribunal ignoró lo establecido por nuestro Tribunal Supremo en lo que atañe a la aplicación de la prescripción respecto al cobro de intereses en casos de ejecución de hipoteca. Debió tomar cuenta el TPI, que aun en el mejor de los casos, un acreedor hipotecario ejecutante sólo podrá obtener el importe correspondiente al principal más todos los intereses devengados, vencidos y no prescritos. Lo anterior está supeditado a que, conforme a la figura de la prescripción quinquenal, sólo se considerarán no prescritos los intereses acumulados en los (5) años previos a la interposición de su acción.

No obstante, en el caso de autos es de aplicación una fórmula distinta a aquélla para la que provee la prescripción quinquenal. En la controversia de autos, en vista de que el inmueble hipotecado estaba en manos de un tercero adquirente, y el pacto sobre pago de intereses obraba inscrito en el Registro de la Propiedad, los intereses no devengados, vencidos y no prescritos que podía obtener el acreedor ejecutante, eran los acumulados en los dos años anteriores a la interposición de la acción hipotecaria, más los acumulados en ese año corriente.

Añádase a todo lo anterior, que estimamos que no tiene razón el apelante en lo que toca al señalamiento de error que realizó respecto a la denegatoria de su moción en solicitud de determinaciones de hechos y conclusiones de derecho adicionales. Tras examinar dicha moción, pudimos tomar cuenta de que la misma no constituye una propuesta que exponga, con suficiente particularidad y especificidad, los hechos que el promovente estima probados, fundándose en cuestiones sustanciales relacionadas con determinaciones de hechos pertinentes o conclusiones de derecho materiales como lo exige nuestro ordenamiento. (*Andino v. Topeka*, 142 D.P.R. 933 (1997)).

En su moción, la parte apelante no particularizó nada, mas bien se limitó de modo general a pedir determinaciones de lo que se testificó en la vista del caso (que obra en la transcripción). A ello, simplemente añadió una repetición de los argumentos y teorías que esbozara en otras mociones previas. Este escrito no satisfizo el propósito de la Regla 43.3 de las de Procedimiento Civil, que es brindarle al tribunal sentenciador la oportunidad de enmendar o corregir cualquier error cometido, esto es, hacer cumplida justicia. (*Andino v.*

*Topeka, supra*).

**IV**

En mérito de lo anterior, ordenamos al Tribunal de Primera Instancia que modifique su pronunciamiento, en lo que respecta a la partida concedida a la parte apelada por concepto de intereses, para que se ajuste a lo aquí expresado y así refleje la normativa imperante en nuestro ordenamiento.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones