Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| ORIENTAL BANK<br><br>Peticionario<br><br>V.<br><br>FERNANDO LUIS COLÓN LLODRAT, JOMARY FLORES COLÓN<br><br>Recurridos | KLCE202500080 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2022CV03537<br><br>Sobre: Cobro de Dinero – Ordinario, Ejecución de Hipoteca: Propiedad Residencial |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2025.

El 28 de enero de 2025, compareció ante este Tribunal de Apelaciones, Oriental Bank (en adelante, parte peticionaria u Oriental), por medio de *Petición de Certiorari* y nos solicita que revisemos la *Resolución Interlocutoria* emitida el 30 de octubre de 2024 y notificada el 8 de noviembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante el aludido dictamen, el foro *a quo* le ordenó a la parte peticionaria otorgar un acuerdo de modificación de hipoteca con la parte recurrida, en la que autorizó al Alguacil a suscribirla en representación del señor Colón Llorat, sin que mediara el consentimiento de este último.

Por los fundamentos que expondremos a continuación, se expide el recurso de *Certiorari*, y se revoca el dictamen recurrido.

**I**

El recurso de marras tiene su génesis en una *Demanda*[1] sobre Cobro de Dinero y Ejecución de Hipoteca, instada el 3 de noviembre de 2022, por Oriental Bank (en adelante, la parte peticionaria) en contra del señor Fernando Luis Colón Llodrat y la señora Jomarys Flores Colón (en adelante y en conjunto, la parte recurrida).

En apretada síntesis, la parte peticionaria alegó ser la tenedora y persona con derecho a exigir el cumplimiento de un pagaré hipotecario suscrito el 30 de noviembre de 2010, por los señores Colón Llodrat y Flores Colón[2], por la cantidad de $110,000 con un interés al 3.50%. El aludido Pagaré fue otorgado originalmente, a favor del Banco Bilbao Vizcaya Argentaria Puerto Rico (BBVA), y adquirido posteriormente por Oriental Bank.[3]

En garantía del referido pagaré los recurridos otorgaron la Escritura de Primera Hipoteca número 139, sobre el apartamento número 202 del Condominio Jesús María Sanromá, sito en la Avenida Luis Muñoz Rivera, en Carolina, Puerto Rico.[4]

La parte peticionaria arguyó que, debido al incumplimiento con la referida obligación, [5] instó la correspondiente acción judicial. Entre sus alegaciones, la parte peticionaria formuló la siguiente:

[…]

6.    La parte demandada incurrió en el incumplimiento del Contrato Hipotecario al no pagar la mensualidad vencida el día 1 de octubre de 2020 y las que han vencido subsiguientemente, por lo que la parte demandante ha declarado vencida la totalidad de la deuda ascendiente a $99,946.98 de principal, más intereses acumulados, que continuarán acumulándose al 5.875% hasta el saldo total de la deuda, más cargos por demora y otros cargos, más costas, gatos y honorarios de abogado, según pactado, más cualquier otro desembolso que haya efectuado o efectúe la parte

---

[1] Véase, págs. 19-49, del Apéndice del recurso de la parte peticionaria.
[2] Los recurridos comparecieron como solteros al otorgamiento del préstamo hipotecario y la escritura de compraventa de propiedad objeto de la acción que nos ocupa.
[3] *Íd.*, págs. 22-26.
[4] Véase, *Certificación de Propiedad Inmueble* del 22 de octubre de 2022, págs. 29-30, del Apéndice del recurso de la parte peticionaria.
[5] Véase, pág. 20, del Apéndice del recurso de la parte peticionaria.

demandante durante la tramitación de este caso para otros adelantos de conformidad con el Contrato Hipotecario.

[...]

Ante los esfuerzos infructuosos para emplazar personalmente a la parte recurrida, previa autorización del foro primario, esta fue emplazada mediante edictos.[6]

El 9 de enero de 2023, el foro primario, emitió *Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas por Videoconferencia*, notificada el mismo día. En la misma refirió el caso al Centro de Mediación de Conflictos, en virtud de la Ley 184-2012 (32 LPRA sec. 2881 *et seq.*) y citó a una reunión inicial a celebrarse el 17 de febrero de 2023.[7]

El 7 de febrero de 2023, el foro *a quo* mediante *Orden*, notificada al día siguiente,[8] declaró Ha Lugar una solicitud de paralización de los procesos de la parte peticionaria.[9] La institución hipotecaria informó que la señora Flores Colón había completado una solicitud de mitigación de pérdidas, por lo que el Tribunal le concedió un término de 45 días para la evaluación de dicha solicitud.

Luego de varios trámites procesales, innecesarios pormenorizar, mediante *Orden* del 15 de noviembre de 2023, notificada el 17 de noviembre de 2023,[10] el foro de primaria instancia refirió nuevamente el caso al Centro de Mediación de Conflictos del Poder Judicial. La vista de mediación compulsoria fue pautada para el 23 de enero de 2024.[11]

---

[6] Véase, págs. 55-57, del Apéndice del recurso de la parte peticionaria.

[7] *Íd.*, págs. 60-62.

[8] Véase, pág. 67, del Apéndice del recurso de la parte peticionaria.

[9] *Íd.*, págs. 63-66. *Moción Solicitando Paralización de los Procedimientos Debido a Proceso de Mitigación de Pérdida ("Loss Mitigation")* del 7 de febrero de 2023.

[10] Véase, págs. 97-100 del Apéndice del recurso de la parte peticionaria.

[11] *Íd.*, pág. 102. Mediante *Moción Informativa y en Solicitud de Orden* del 25 de abril de 2024 indicó que se había pautado para el 1 de febrero de 2024 una segunda reunión; una tercera para el 29 de febrero de 2024, y una cuarta para el 17 de abril de 2024.

El 14 de mayo de 2024, el Centro de Mediación Conflictos informó que las partes sostuvieron su reunión el 17 de abril de 2024 *sin llegar a un acuerdo*, por lo que daba por concluida su intervención.[12]

Retomado el proceso judicial, el 22 de mayo de 2024, notificada el mismo día, el foro *a quo* concedió a los recurridos el término de 30 días para presentar su alegación responsiva.[13]

Luego de que el Tribunal le concediera una prórroga,[14] la señora Flores Colón contestó la demanda el 10 de julio de 2024. Entre otros planteamientos, la recurrida invocó la defensa de falta parte indispensable. Asimismo, en un escrito separado y presentado el mismo día, esta solicitó la anotación de rebeldía en contra del señor Colón Llodrat.[15]

Subsiguientemente, el 26 de julio de 2024, la parte peticionaria presentó *Moción Reiterando que se Anote Rebeldía a Fernando Luis Colón Llodrat y en Solicitud de Sentencia Sumaria*,[16] en la que solicitó el pago de lo adeudado o, de ser de declarada ha lugar la sentencia sumaria solicitada, se procediera a la ejecución de la hipoteca. Añadió lo siguiente:

[…]

19. Se informa que la parte codemandada ha expresado a la suscribiente el interés de solicitar a este Honorable Tribunal que le ordene al Alguacil a comparecer a una Escritura de Modificación a nombre del codemandado Colón Llodrat. Se adelanta que Oriental Bank se opone a dicho "remedio" por no proceder conforme a derecho. Los contratos deben ser voluntarios y con el consentimiento de los contratantes.

[…]

---

[12] Véase, págs. 110-111, del Apéndice del recurso de la parte peticionaria. *Moción Informativa sobre Resultado de Caso de Ejecución de Hipoteca Atendido Mediante Servicio de Videoconferencia.*
[13] Véase, pág. 112, del Apéndice del recurso de la parte peticionaria.
[14] *Íd.*, págs. 113-114.
[15] Véanse, págs. 119-123, del Apéndice del recurso de la parte peticionaria.
[16] *Íd.*, pág. 126.

Posteriormente, el foro primario, mediante *Resolución* el 5 de agosto de 2024, notificada al día siguiente,[17] declaró Ha Lugar la anotación de rebeldía solicitada y señaló una vista presencial para el 20 de agosto de 2024.

El 4 de octubre de 2024, la parte peticionaria presentó su *Moción Informativa y Memorando de Derecho*, en la que reiteró [18] su solicitud de la ejecución de la hipoteca del bien inmueble en cuestión. Por igual, se opuso a que el Tribunal le ordenara al alguacil firmar la Escritura de Modificación de Hipoteca en representación del co-titular en rebeldía y sin que mediara acuerdo entre partes o autorización del recurrido para otorgar dicho negocio jurídico.

El 15 de octubre 2024, la parte recurrida Flores Colón, presentó una *Moción en Solicitud de Orden,*[19] en la que, entre otras cosas, solicitó lo siguiente:

[…]

3.     Emita una Orden y Mandamiento al Alguacil para que en su día, comparezca a firmar, en sustitución del ausente y rebelde codemandado, las escrituras de modificación de hipoteca previamente acordadas entre el Bando [sic] y la codemandada Flores Colón.

[…]

Ese mismo día, Oriental Bank nuevamente se opuso a la solicitud de la parte recurrida Flores Colón.[20]

El 30 de octubre de 2024, el foro primario emitió la *Resolución Interlocutoria*[21] que se transcribe:

LOS CODEMANDADOS NO CONTRAJERON MATRIMONIO, LA TITULARIDAD DEL BIEN PERTENECE A UNA COMUNIDAD DE BIENES.  EL CODEMANDADO FERNANDO LUIS COLÓN LLODRAT ESTÁ EN REBELDÍA Y RENUNCIÓ A LEVANTAR DEFENSAS AUN CUANDO ESTÁ AL TANTO DEL

---

[17] Véase, pág. 197 del Apéndice del recurso de la parte peticionaria. Véase, además, Entrada Núm. 63 de SUMAC. En la notificación de la determinación se hace referencia a la entrada 62 de SUMAC, que corresponde a la *Moción Reiterando que se Anote Rebeldía a Fernando Luis Colón Llodrat y en Solicitud de Sentencia Sumaria* presentada por la peticionaria el 26 de julio de 2024.

[18] Véanse, págs. 198-211 del Apéndice del recurso de la parte peticionaria.

[19] *Íd.*, págs. 212-226.

[20] *Íd.*, págs. 227-231.

[21] *Íd.*, pág. 1.

PROCEDIMIENTO DE EPÍGRAFE Y PARTICIPÓ DEL PROCESO DE MEDIACIÓN.

PROCEDAN LAS PARTES A LA MODIFICACIÓN DE HIPOTECA A LA QUE COMPARECERÁ EL ALGUACIL PARA SUSCRIBIR ACUERDO EN REPRESENTACIÓN DE LA PARTE EN REBELDÍA.

En desacuerdo con lo resuelto, el 21 de noviembre de 2024, la parte peticionaria presentó *Moción de Reconsideración de Resolución Interlocutoria*.[22] En atención a la aludida moción, mediante *Orden* del 26 de noviembre de 2024, notificada el mismo día, el Tribunal de Primera Instancia, le concedió a la parte recurrida 15 días para presentar su posición.[23] En cumplimiento con lo ordenado, el 11 de diciembre de 2024, la parte recurrida presentó *Moción en Cumplimiento de Orden*.[24] El 2 de enero de 2025, mediante *Resolución Interlocutoria* notificada el mismo día, el foro *a quo*, declaró No Ha Lugar la reconsideración presentada.[25]

Inconforme con lo determinado, el 28 de enero de 2025, compareció ante este foro apelativo la parte peticionaria mediante petición de *Certiorari*, en la que esbozó los siguientes señalamientos de error:

PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA RESOLUCIÓN EN LA QUE LE ORDENA AL BANCO HIPOTECARIO A SUSCRIBIR UN ACUERDO DE MODIFICACIÓN DE HIPOTECA CON LA CODEMANDADA Y CON EL ALGUACIL COMO REPRESENTANTE DEL CODEMANDADO CUANDO TAL ACUERDO ES INEXISTENTE.

SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA RESOLUCIÓN EN LA QUE LE ORDENA AL BANCO HIPOTECARIO A SUSCRIBIR UNA ESCRITURA DE MODIFICACIÓN DE HIPOTECA CON LA CODEMANDADA Y CON EL ALGUACIL COMO REPRESENTANTE DEL CODEMANDADO CUANDO EL PROCESO DE MEDIACIÓN CULMINÓ SIN ACUERDO ALGUNO.

TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ORDENARLE AL ALGUACIL A SUSCRIBIR EN REPRESENTACIÓN DEL CODEMANDADO UNA ESCRITURA DE

---

[22] *Íd.*, págs. 2-10.
[23] *Íd.*, pág. 11.
[24] *Íd.*, págs. 12-17.
[25] *Íd.*, pág. 18.

MODIFICACIÓN DE HIPOTECA CUANDO TAL CODEMANDADO, COTITULAR Y DEUDOR SOLIDARIO EXPRESAMENTE SE NEGÓ A LLEGAR A UN ACUERDO DE MODIFICACIÓN DE HIPOTECA, LO QUE PODRÍA CONLLEVAR LA NULIDAD RADICAL DE ESE NEGOCIO JURÍDICO POR FALTA DE CONSENTIMIENTO.

El 10 de febrero de 2025, la parte recurrida incoó su *Oposición a Expedición de Certiorari.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A. Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones[26], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[26] 4 LPRA Ap. XXII-B, R. 40.

(C)  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[27]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 335 (2005), en nota al calce núm. 15, citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560. Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Díaz de León*, supra, pág. 918, citando a *Pueblo v. Tribl. Superior*, 81 DPR 763, 771

---

[27] 4 LPRA Ap. XXII-B, R. 40.

(1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Teoría General de los Contratos

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas. Art. 1042 del Código Civil,[28] 31 LPRA ant. sec. 2992; *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Los contratos se perfeccionan cuando median el objeto, consentimiento y causa.  Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio.  Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Aponte Valentín et al. v. Pfizer Pharm., LLC*, 208 DPR 263 (2021).  En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes. *Pérez Rodríguez v. López Rodríguez* et al. 210 DPR 163 (2022); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. V. Vega III*, 136 DPR 157 (1994).  No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art.

---

[28] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la *Demanda* y los hechos que dan base a esta tuvieron su lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

1207 del Código Civil, 31 LPRA sec. 3372. El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público. 31 LPRA sec. 3372; *Burgos López et al. v. Condado Plaza*, supra, págs. 7-8; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375; *Aponte Valentín et al. v. Pfizer Pharm.*, supra; *Burgos López et al. v. Condado Plaza*, supra, pág. 8. Los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

### C. La Hipoteca

La hipoteca es una garantía de naturaleza real, que se caracteriza por su accesoriedad y por su función aseguradora de una deuda en dinero. *Vázquez Santiago v. Registrador*, 137 DPR 384, 388 (1994). Se trata de un contrato efectuado en garantía del cumplimiento de una obligación principal; sin ésta ningún contrato de hipoteca pudiera subsistir al carecer de objeto -que es la garantía principal cuyo cumplimiento asegura-. *Liechty v. Descartes Sauri*, 109 DPR 496, 500-502 (1980).

Pese a su particular carácter constitutivo y accesorio, y los requisitos antes mencionados, la hipoteca, "requiere para su validez que concurran los elementos esenciales de **consentimiento**, objeto y causa". *Romero v. S.L.G. Reyes*, 164 DPR 721, 736 (2005).

### D. Ley de Transacciones Comerciales (LTC)

La Ley Núm. 208-1995, conocida como la Ley de Transacciones Comerciales (LTC), según enmendada, 19 LPRA sec. 401 *et seq.*, se adoptó con la finalidad de simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, uniformar el derecho entre las diversas jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales. Sec. 1-102 de la LTC, 19 LPRA sec. 401. *Cruz Consulting v. El Legado, et al.,* 191 DPR 499, 508 (2014); *COSSEC v. González López,* 179 DPR 793, 802 (2010). Así, Puerto Rico se adaptó a la celeridad del tráfico moderno y a las tendencias del Siglo XXI en aspectos de transacciones bancarias y comerciales. Véase, Exposición de la Ley de Transacciones Comerciales, Ley Núm. 208-1995, *supra,* 1995 (Parte I) Leyes de Puerto Rico 1012. *DLJ Mortgage v. SLG Santiago-Ortiz,* 202 DPR 950, 983-984 (2019).

Dicha Ley, en su Capítulo 2, recoge todo lo relacionado a la cesión de instrumentos negociables. Véase, Sec. 2-203 de la LTC, 19 LPRA sec. 553. *DLJ Mortgage v. SLG Santiago-Ortiz,* supra, pág. 985. La Sec. 2-102 de la LTC define un instrumento negociable, como:

> (a) [. . .] una promesa incondicional de pagar una suma de dinero, pagaderos a la presentación o en fecha determinada, que no contiene ninguna otra promesa u orden, si el mismo:
>
>> (1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
>>
>> (2) es pagadero a la presentación o en una fecha específica, y
>>
>> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener: [. . .]
>> 19 LPRA sec. 504(a).

**Es decir, un instrumento negociable es un negocio jurídico relativamente sencillo producto de un acuerdo entre**

**partes**, sin requisitos particulares de forma más allá del contenido requerido por la LTC. (Énfasis nuestro). Por ende, este negocio jurídico es susceptible de una novación por **acuerdo entre sus partes**. (Énfasis nuestro). En la actualidad, los instrumentos negociables más comunes, además de cheques, incluyen los giros, certificados de depósitos y, particular a nuestra controversia, los pagarés. *First Bank v. Registradora*, 208 DPR 64, 90-91, (2021), en referencia a *COSSEC et al. v. González López et al.*, 179 DPR 793, 800 (2010).

### E. El poder

Nuestro Código Civil define el poder como "[l]a facultad por la que una persona legitimada para otorgar un determinado negocio jurídico autoriza a otra para que actúe en su nombre, y le imputa al poderdante los efectos jurídicos del negocio jurídico que realice". Art. 326 del Código Civil de Puerto Rico, 31 LPRA sec. 6281. Cualquier persona capaz podrá otorgar, por medio de la concesión de un poder, su representación para que otra actúe en su nombre. Art. 327 del Código Civil de Puerto Rico, 31 LPRA sec. 6282. Según el Código Civil, no hay ningún requisito de forma dispuesto para el poder, no obstante, el otorgado deberá constar en un instrumento público para realizar un acto que deba extenderse en instrumento público. Así, deberá constar en documento auténtico: "(a) los poderes para comparecer ante los tribunales, salvo los que se otorguen en favor de abogados autorizados a ejercer la profesión; (b) los poderes para administrar bienes; y **(c) todos aquellos que afecten los derechos de un tercero"**. Art. 329 del Código Civil de Puerto Rico, 31 LPRA sec. 6284. *(Énfasis suplido).* El poder podrá ser general o especial, es general cuando comprende toda una categoría de negocios del poderdante, y especial cuando abarca a uno o varios negocios determinados. Art. 331 del Código Civil de Puerto Rico, 31 LPRA sec. 6286.

### *F. Ley de ayuda al deudor hipotecario*

La Asamblea Legislativa tras evaluar la iniciativa del Gobierno Federal y a tenor del Real Estate Settlement Procedures Act, 12 U.S.C. 2601, *et seq.,* (RESPA) adoptó en nuestra jurisdicción el programa de Mitigación de Pérdidas "Loss Mitigation", a través de la Ley de Ayuda al Deudor Hipotecario, Ley Núm. 169 de 9 de agosto de 2016, 32 LPRA sec. 2891, *et seq.*, (en adelante Ley Núm. 169-2016). Dicho estatuto fue creado a los fines de requerirle al acreedor de un préstamo en mora, que antes de iniciar cualquier proceso legal que pudiera culminar en una demanda de ejecución de hipoteca y cobro de dinero, le ofrezca al deudor hipotecario la alternativa de Mitigación de Pérdidas. Por consiguiente, tras la culminación de dicho proceso, y el deudor hipotecario conocer si cualifica o no para la aludida alternativa, entonces el acreedor podrá comenzar un proceso legal ante los tribunales de Puerto Rico.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

### III

En sus tres señalamientos de error, la parte peticionaria sostiene que, incidió el foro primario al: 1) emitir una resolución en la que le ordena al banco hipotecario a suscribir un acuerdo de modificación de hipoteca con la codemandada y con el alguacil como representante del codemandado cuando tal acuerdo es inexistente; 2) emitir una resolución en la que le ordena al banco hipotecario a suscribir una escritura de modificación de hipoteca con la codemandada y con el alguacil como representante del codemandado cuando el proceso de mediación culminó sin acuerdo alguno; y 3) al ordenarle al alguacil a suscribir en representación del codemandado una escritura de modificación de hipoteca cuando tal codemandado, cotitular y deudor solidario expresamente se negó a llegar a un acuerdo de modificación de hipoteca, lo que podría

conllevar la nulidad radical de ese negocio jurídico por falta de consentimiento.

En esencia, la parte peticionaria nos solicita que revisemos la *Resolución Interlocutoria* emitida el 30 de octubre de 2024, notificada el 8 de noviembre de 2024, mediante la cual, ordenó a la parte peticionaria suscribir un acuerdo inexistente de modificación de hipoteca con la recurrida Flores Colón y con el Alguacil, en representación del recurrido Colón Llodrat, sin el consentimiento de este último. Adelantamos que, le asiste la razón.

Por encontrarse intrínsecamente relacionados los tres señalamientos de error esgrimidos por la parte peticionaria, los discutiremos de forma conjunta.

Del expediente ante nuestra consideración surge que, el 30 de noviembre de 2010, los señores Colón Llodrat y Flores Colón, estando solteros, efectuaron un préstamo hipotecario con el Banco Bilbao Vizcaya Argentaria Puerto Rico (BBVA), luego Oriental[29] y otorgaron conjuntamente, la escritura de compraventa de la propiedad inmueble en controversia.[30] Debido al incumplimiento con la referida obligación, el acreedor hipotecario,[31] instó la correspondiente acción judicial.

Luego de una revisión ponderada y minuciosa del expediente ante nuestra consideración colegimos que, en efecto, a pesar de que

---

[29] *Íd.*, págs. 22-26.
[30] Véase, págs. 29-30, del Apéndice del recurso de la parte peticionaria. *Certificación de Propiedad Inmueble* del 22 de octubre de 2022.
[31] Véase, pág. 20 del Apéndice del recurso de la parte peticionaria. La alegación número 6 de la *Demanda* expresa el balance adeudado como sigue:

> [...]
> 6. La parte demandada incurrió en el incumplimiento del Contrato Hipotecario al no pagar la mensualidad vencida el día 1 de octubre de 2020 y las que han vencido subsiguientemente, por lo que la parte demandante ha declarado vencida la totalidad de la deuda ascendiente a $99,946.98 de principal, más intereses acumulados, que continuarán acumulándose al 5.875% hasta el saldo total de la deuda, más cargos por demora y otros cargos, más costas, gatos y honorarios de abogado, según pactado, más cualquier otro desembolso que haya efectuado o efectúe la parte demandante durante la tramitación de este caso para otros adelantos de conformidad con el Contrato Hipotecario.
> [...]

las partes acudieron al proceso de mediación compulsoria, según lo ordenado por la Ley 184-2012, dicha gestión no rindió fruto, por lo que las partes regresaron al trámite ordinario.

Surge del expediente que, la recurrida Flores Colón intentó acogerse al proceso de mitigación de pérdidas y llevó a cabo las gestiones conducentes a lograr un acuerdo con el acreedor hipotecario, a los fines de efectuar una modificación de la hipoteca en cuestión. Empero, no se logró un acuerdo entre las partes, toda vez que, Flores Colón interesaba retener la propiedad, mientras que, Colón Llodrat deseaba disponer de ella.

Acaecidas varias incidencias procesales, innecesarias reseñar, el foro *a quo* le anotó la rebeldía al señor Colón Llodrat.

Posteriormente, a solicitud de la parte peticionaria, el foro de instancia le ordenó banco hipotecario suscribir un acuerdo modificación del préstamo hipotecario, en el que comparecería el alguacil, en representación del recurrido en rebeldía, el señor Colón Llodrat. Lo anterior, sin el consentimiento de este último.

Tal y como esbozamos previamente, en nuestro ordenamiento jurídico, los contratos se perfeccionan cuando median el objeto, consentimiento y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Aponte Valentín et al. v. Pfizer Pharm., LLC*, 208 DPR 263 (2021).

Así pues, el **consentimiento** es un requisito ineludible en materia contractual. La validez de los acuerdos se sostiene en su concurrencia con el objeto y la causa. Por lo tanto, ausente el consentimiento, no existirá un acuerdo válido. *Romero v. S.L.G. Reyes*, supra.

Consecuentemente, **ante la inexistencia de un acuerdo,** la firma de la escritura de modificación de hipoteca mediante la representación por un tercero de una parte que no ha consentido a ello, constituiría una gestión inoficiosa; sin validez jurídica alguna.

Ante este escenario, concluimos indefectiblemente que los errores señalados por la peticionaria al foro primario fueron cometidos.

**IV**

Por los fundamentos que anteceden, se expide el recurso de *Certiorari*, y se revoca el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones